**UNITED STATES of America,
Appellee,**

v.

**William Dove WILLIAMS, Appellant.**

**No. 12216.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 11, 1968.

Decided March 5, 1969.

---

8.  Urbano did not appeal.

10.  387 F.2d 519 (2 Cir. 1967).

Bernard G. Barrow, Norfolk, Va. (Court-appointed counsel) [Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief], for appellant.

William T. Mason, Jr., Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before SOBELOFF, WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

In this appeal from the imposition of a ten-year sentence of imprisonment under 18 U.S.C. § 4208(a) (2), the government concedes that if the district judge believed the defendant Williams was a narcotic addict and an eligible offender under 18 U.S.C. § 4251(f), but thought he did not have the option to allow Williams the benefit of sentence under the Narcotic Addict Rehabilitation Act, 18 U.S.C. § 4251 et seq., then it would follow that the district judge had sentenced under a misconstruction of his authority. The United States further concedes that in such event the error should be corrected by vacating the defendant's sentence.

Williams does not attack his guilty plea and does not ask for a new trial. He does not complain of the severity of his sentence and does not ask that we "review" it.[1] He asks only that he be resentenced and fairly considered for treatment under the Narcotic Addict Rehabilitation Act. We think the premises of the government's concession are established, and conclude that Williams is entitled to the limited relief sought.

Williams pleaded not guilty to an eight-count indictment charging him with forging and uttering four government checks. On the day set for trial he, with the permission of the court, withdrew his previously entered plea of not guilty as to count 2 and entered a guilty plea to that count only. Subsequently, the court allowed the motion of the United States Attorney to dismiss the other seven counts, and delayed sentencing to permit the probation officer to prepare and have available a presentence report to assist the district judge in discharging his sentencing responsibility.

On the day set for sentencing, the court convened and heard testimony as to the substantive offense. Counsel for defendant then offered in evidence the written report of Dr. Dietrich W. Heyder, a medical doctor specializing in psychiatry, who had examined the defendant pursuant to an order of the court.[2] After concluding that his diagnostic impression was one of "drug addiction, severe," secondary to a sociopathic disorder, Dr. Heyder made the following recommendation:

" * * * That the patient be admitted to the Public Health Hospital in Lexington,[3] Kentucky, in order to receive treatment to prevent further relapses. It might be noted at this point that the mentioned hospital does not only serve to treat acute cases and withdrawal symptomytology but is specializing in therapeutic efforts to change the patient to enable him to function without drugs after release. Untreated, the prognosis for relapse is very poor, whereas the prognosis for change is good if proper care will be instituted." (Footnote ours.)

This is the *only* medical testimony in the record. The doctor's diagnosis is confirmed by portions of the presentence report which indicated a history of heroin use beginning in 1958 and continuing on a daily basis until his current arrest, with perhaps a period of remis-

1. It is settled that we lack this power except in the most exceptional circumstances. United States v. Pruitt, 341 F. 2d 700 (4th Cir. 1965).

2. By stipulation, the doctor was relieved of the necessity of appearing and testifying, and his written report was received in lieu thereof.

3. Without objection we are presented a letter from C. R. Hagan, Assistant Director, Bureau of Prisons, dated March 29, 1968, to counsel for Williams advising, in part, as follows:

"As you may know, the Narcotic Addict Rehabilitation Act was signed into law in November 1966. This Act places additional responsibilities upon the Public Health Service Hospitals. As a result, the facilities at Lexington and Fort Worth are no longer available to us for the treatment of sentenced addicts. Since Mr. Williams is a regularly sentenced prisoner, he is not eligible for commitment to either of the two hospitals."

sion between February 1963 and September 1965, although the probation officer suggested, despite Williams' denial, that he probably used narcotics to some extent even during this period. In his evaluative summary, the probation officer concluded that Williams "has virtually no goal or ambition other than to satisfy his immediate pleasures and to maintain his drug habit. It is believed that considerable reorientation in a controlled environment is necessary for Williams to rise above his parasitic existence in society."

No evidence was offered tending to show that Williams was *not* addicted to narcotics, nor did the United States Attorney so contend. *All* of the evidence before the court, including the presentence report, tended to show that he was, in fact, an addict. Immediately before passing sentence, the court indicated its awareness of the problem of narcotics for Williams in the words set out in the margin.[4] Immediately after sentencing, counsel for Williams moved the court to include in the sentence a direction to the Attorney General to examine Williams and determine if he were eligible for commitment to a Public Health Service Center for addiction. The district judge replied as follows:

"Well, I feel certain that this will be called to their attention without the necessity of the Court saying anything about it and if they determine, after an examination and investigation of the matter, that it's proper that he be confined in some special institution that they should do so rather than the Court suggest that they do so.[5] I believe that's a matter that should be determined by their discretion." (Footnote ours.)

Effective February 8, 1967, the Congress enacted legislation, known as the Narcotic Addict Rehabilitation Act of 1966, permitting special commitment for treatment of certain narcotic addicts who are found to be "eligible." 18 U.S.C. § 4251 et seq. It is provided that such a commitment shall be for an indeterminate period of time not to exceed ten years. It is this special commitment and the treatment available thereunder that is sought by defendant Williams.

The government contends that Williams was correctly and properly sentenced and is not entitled to vacation of the sentence and resentencing for three reasons.

First, says the government, the record of the sentencing procedure, and especially the remarks of the district judge immediately before pronouncing sentence (set out in note 4, *supra*), show that the district judge did not believe

---

4. "The court should, before passing sentence, call attention to the fact that the probation report shows that the defendant in this case first commenced or was found guilty of possession of narcotics or marijuana cigarettes as early as 1958 and that in 1960 he was convicted in the State of New York of jostling and at that time he made the statement that he was a drug addict. He has been convicted several times since then—in 1961 again for jostling; in 1962 again for jostling. In 1967 he was arrested and charged with the possession of narcotics. In between that time he has had several convictions, most of them misdemeanors, misdemeanor convictions, but in '66 he was charged with the concealment of merchandise; again in '66 with petty larceny, and in '67 with carrying a concealed weapon and with tampering with an automobile.

"The evidence in this case does point out that during a period of time from 1963 until some early part of 1965 he contends he was living with his wife and getting along without any difficulty. It would appear from that if he were a drug addict, as he said he was, in 1960 that he must have been able to adjust himself pretty well during the period of 1963 and 1965 and it must be something that is not too habitual with him if he can adjust himself with it; but if it is habitual then he does need some confinement to give him an opportunity to have some treatment and to be cured of the habit, if he has formed the habit."

5. But the Bureau of Prisons' position is that Williams, because he was not sentenced under the Narcotic Addict Rehabilitation Act, but was instead "regularly sentenced," is not eligible for commitment to a Public Health hospital. Note 3, *supra*.

that the defendant was an addict. Without such a belief there is no duty upon the district judge to place the offender in the custody of the Attorney General for an examination to determine whether he is an addict and is likely to be rehabilitated through treatment.[6]

■ What the district court said should be read in the light of *all* of the evidence, which evidence tends to support only one conclusion: that Williams was under severe drug addiction, presently in remission because of his confinement in jail. Although it is not entirely clear, we think the most reasonable interpretation of the court's language set out in the margin (note 4, *supra*) is that he believed he had before him a narcotic addict. Without ignoring the record he could scarcely have believed otherwise. The credibility of the doctor and his competence were not questioned.

■ Secondly, and alternatively, the government insists that even if the trial judge believed the defendant to be a narcotic addict, the statute confers upon the judge discretion as to whether to invoke the provisions of 18 U.S.C. §§ 4252 and 4253, and the trial judge here exercised that discretion reasonably so that his failure to commit for examination was not an abuse of discretion and is not subject to correction on appeal. It is true that 18 U.S.C. § 4252 does say that the court "may" place the eligible offender in custody for an examination to determine whether he is an addict. We agree with the government that the legislative choice of the word "may" instead of the word "shall" clearly indicates an intention to confer upon district judges reasonable discretion whether to commit for an examination. We do not consider the possibility of an abuse of discretion because we conclude that the district judge here did not exercise

at all the discretion conferred upon him. It is significant that nowhere in the record is there contained any mention whatsoever of the Narcotic Addict Rehabilitation Act of 1966 or any reference to the pertinent statutes by citation or otherwise. It is quite commonplace in the district courts for defense counsel to request of the trial judge that special instructions to the custodial authority be contained in the commitment. Such requests range from complete physical examinations to special dietary needs. We think the request here, not pinpointed to the specific statute, which was a new one, was not unreasonably interpreted by the district judge as one of the usual prayers for special instructions commonly heard under such circumstances.[7] If we expect district judges, even the most able of them, to be a talking play-back of every statute conceivably pertinent to the myriad fact situations constantly changing in kaleidoscopic confusion in a criminal court, we expect too much. What is not in the record is even more convincing than what is in it. If the Narcotic Addict Rehabilitation Act of 1966 had specifically been brought to the court's attention, without a doubt, in our opinion, the record would contain colloquy about its statutory history and purpose and its intended application to offenders such as Williams. We think the district judge here did not exercise his discretion under the Act for the simple reason that it was not sufficiently called to his attention to make him aware of his discretion and his responsibility for the exercise of it.

■ That a defendant has a right to the exercise of the judge's discretion, in selecting his sentence or treatment, is established in a firm line of cases interpreting a California statute, similar to the one here, dealing with narcotic ad-

---

6. "If the court believes that an eligible offender is an addict, it may place him in the custody of the Attorney General for an examination to determine whether he is an addict and is likely to be rehabilitated through treatment." 18 U.S.C. § 4252.

7. Frequently, defendants ask for confinement in a particular place—not for special treatment—but because it is closer to friends and relatives who may visit, or even because it enjoys a better jailhouse reputation than another institution.

dicts. In pertinent part that statute provides:

"Upon conviction of a defendant for any crime in any superior court, if the judge ascertains that the defendant is addicted or by reason of repeated use of narcotics is in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition of the sentence and direct the sheriff to file a petition to ascertain if such person is addicted to narcotics or in imminent danger thereof unless in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section. * * *"
Cal. Penal Code, § 6451.

In People v. Bradford, 212 Cal.App.2d 403, 28 Cal.Rptr. 115 (1963), a California appellate court held that only upon a finding that defendant was not an addict nor in danger of becoming one, or upon a finding that defendant's past record indicated a pattern of criminality, did this section allow the judge to refuse to institute proceedings for a determination under the statute of the status of a defendant convicted of heroin possession. Where the judge mistakenly considered defendant ineligible for consideration under the statute, the court held that the matter must be remanded for the proper exercise of the judge's discretion. In *Bradford* the California attorney general joined with the appellant in recommending remand.

In People v. Wallace, Cal.App., 27 Cal. Rptr. 44, the trial judge had stated his sympathy with defendant, convicted of heroin possession, but further stated that he felt that defendant's prior misdemeanor conviction rendered him ineligible for treatment under the statute. The imposition of a prison sentence was vacated by the California Supreme Court, which decided that the earlier conviction was no bar to treatment under the statute and that the judge should have exercised his discretion.

"The record shows that the trial judge refused to exercise his discretion in the erroneous belief that he had none. Under such circumstances the judgment must be reversed, and the cause remanded not for a new trial, but in order that the trial court may have the opportunity to exercise its discretion under the provisions of section 6451 of the Penal Code." People v. Wallace, 59 Cal.2d 548, 30 Cal.Rptr. 449, 452, 381 P.2d 185, 188 (1963).

In People v. Ibarra, 60 Cal.2d 460, 34 Cal.Rptr. 863, 386 P.2d 487 (1963), the record showed that the trial judge had told defendant,

"I had hoped that Department 95 would find you eligible for the treatment program so that you could be returned to ordinary life and have the opportunity to support your family as soon as they would pronounce you cured. Unfortunately they have not found you eligible because of the two prior convictions of violation of narcotics laws. * * * So, Mr. Ibarra, I have no alternative, under the law as it is written, but to impose a state prison sentence." 34 Cal.Rptr. at 867–868, 386 P.2d at 491.

The Supreme Court of California reversed for exercise of the judge's discretion to determine whether defendant was a fit subject for the program.

We find these California cases clearly apposite. We hold that the district judge is responsible for exercising his sound discretion as to treatment or imprisonment, under the Narcotic Addict Rehabilitation Act, of those eligible defendants who come before him. The failure to exercise discretion is error which may be corrected by remand for resentencing.

Finally, the government contends that, in any event, the trial judge could not have given Williams the benefit of 18 U.S.C. §§ 4252 and 4253 because Williams was not an "eligible offender" as defined by § 4251(f) (3). That section makes ineligible any offender " * * * against whom there is pending a prior

charge of a felony which has not been finally determined * * *." 18 U.S.C. § 4251(f) (3).

■ Nothing in the record below indicates that there was pending against Williams an undetermined felony charge except an entry in the probation officer's presentence report showing that on October 13, 1967, a bench warrant issued in New York charging him with *"felonious* possession of narcotic drug." (Emphasis added.) Apparently no one present at the sentencing proceeding below attached any significance at the time to the word "felonious" appearing in the presentence report. The argument now advanced to us was not urged upon the district judge. Indeed, the felonious nature of the pending charge was not even called to his attention by the prosecutor nor did the judge himself note it in his remarks (quoted in the margin, note 4, *supra*) immediately prior to sentencing. Belatedly, in this court, the government urges the importance of the pending felony disclosure in the presentence report and defense counsel urges the incompetency of the report to establish a fact of disqualifying importance. We think it would be unfair to allow the government to prevail on the basis of what appears to have been a fortuitous disclosure, the importance of which was perceived by none of the participants below. Moreover, we are advised in oral argument that the pending felony charge in New York has now been disposed of.[8]

■ In the administration of criminal justice in a federal system, courts of all jurisdictions frequently give way and defer to the court having custody of the offender. Although detainers are filed in many instances for further prosecution, probably as many or more other charges pending in other jurisdictions are simply dismissed on the pragmatic principle that if one court punishes sufficiently, that is enough. We see noth-ing in the statutory scheme that would prevent a district judge from continuing the sentencing procedure for a reasonable interval to permit a defendant to attempt disposition of a felony charge pending in some other jurisdiction, that would otherwise disqualify him from consideration under the Narcotic Addict Rehabilitation Act of 1966. Postponed sentencing is the rule rather than the exception in the federal courts. Here sentencing was delayed four weeks after establishment of guilt to await the presentence report. It is hard to think of a better reason for sentencing delay than to enable counsel for a prisoner to collect all his offenses in one place so that the sentencing court can, in effect, wipe the slate clean. It often occurs and is beneficial to society and the offender. Plainly such a possibility was not considered below. Without reflection upon the district judge, we think that because he was not made aware of the sentencing possibilities under 18 U.S.C. § 4251 et seq., he, therefore, did not exercise the discretion conferred upon him as to (a) whether he should postpone sentencing to enable Williams to become an eligible offender, and (b) whether to commit him to the custody of the Attorney General for examination under 18 U.S.C. § 4252.

Title 18 U.S.C. § 4251 reads, in pertinent part, as follows:

"(f) 'Eligible offender' means any individual who is convicted of an offense against the United States, but does not include—

* * * * * *

"(3) an offender against whom there is pending a prior charge of a felony which has not been finally determined or who is on probation or whose sentence following conviction on such a charge, including any time on parole or mandatory release, has not been fully served: *Provided,*

---

8. Without objection we have been furnished a copy of a certificate of the Clerk of the Supreme Court of New York County showing disposition of the offense of feloniously possessing a narcotic drug by imposition of a one-year suspended sentence.

That an offender on probation, parole, or mandatory release shall be included if the authority authorized to require his return to custody consents to his commitment."

The felony charge is now "finally determined." Williams was not put on "probation" by the New York Supreme Court. But it is clear that the one-year suspended sentence imposed by New York has not been "fully served." Whether a suspended sentence, which by hypothesis is not expected to be served, is a bar to eligibility[9] under 18 U.S.C. § 4251(f) (3) should be considered by the district court on remand in the light of statutory history and the purpose of the Congress to facilitate treatment and rehabilitation of narcotic addicts.

But if the court concludes that Williams is even yet not an "eligible offender," that is not the end of the matter. Reasonable opportunity should be afforded Williams to obtain the consent of the New York Supreme Court to commitment under the Act. Probably New York suspended the one-year sentence because Williams had received a ten-year indeterminate sentence in the federal court. Since commitment under the Narcotic Addict Rehabilitation Act may also be for as long as ten years, presumably the New York court would consent to such commitment.

We note that the statute authorizes such consent in regard to those on "pro-bation, parole, or mandatory release" and is silent as to one given simply a "suspended" sentence. The likelihood of being required to serve a sentence simply suspended is even less than in the case of those specified by the Congress. It would make no sense to permit eligibility to those enumerated and deny it to one treated even more leniently by the sentencing court. The obvious congressional purpose was to bar those for whom expensive treatment would probably be a waste of time and money because of the probability that its efficacy would be destroyed by an overhanging probable active sentence.[10] If New York can consent to commitment under this statute of one whose New York sentence is suspended *and* who is then placed on probation, surely it can consent to such commitment of one whose sentence is suspended *without* probation.

Our independent examination of the record strongly suggests that there was "invisible" plea bargaining. When the district judge began his Rule 11 examination of Williams prior to accepting his plea of guilty to count 2, the defendant almost told the whole truth. He caught himself in time and under the guidance of the district judge completed the catechism—giving the "correct" answer to the judge's questions. The colloquy taken from the transcript is reproduced in the margin.[11]

9. The case was argued before us on the assumption that Williams is now an "eligible offender." The United States did not contend otherwise.

10. The reports and legislative debates on this bill indicate that this was assumed, almost without discussion. E. g., Hearings Before Subcommittee 2 of the House Committee on the Judiciary, 89th Cong., 1st and 2d Sess., ser. 10, p. 81 (Statement of Atty. Gen. Nicholas deB. Katzenbach) (1966). Further indications of this purpose are found in the emphasis the bill placed on aftercare following cure—a manifest impossibility in a prison environment. See, e. g., H.R.Rep. No. 1486, 89th Cong., 2d Sess. 11–14 (1966); H.R. Rep. No. 2316, 89th Cong., 2d Sess.

("Declaration of Policy") (Conference Report to Accompany H.R. 9167) (1966).

11. "THE CHIEF DEPUTY CLERK: Criminal Action 12,353—the United States versus William Dove Williams.

"Is the government ready, Mr. Mason?

"MR. MASON: Yes, Mr. Clerk; the government is ready.

"I understand from prior conversation with Mr. Barrow that there may be a motion on behalf of his client this morning—

"THE COURT: All right, sir.

"MR. MASON: —for a change of plea.

"MR. BARROW: Your Honor, the defendant is ready and the defendant would like to move the Court for permission to change his plea to one count

■ We think that plea bargaining serves a useful purpose both for society and the prisoner and is a permanent part of the criminal courtroom scene, but we think that it ought to be brought out into the open.[12] We do not suggest that defense counsel and the prosecutor actually conduct their negotiations in open court, but we do urge that in this circuit a full and complete disclosure of such negotiations be announced to the court and made a part of the record. The mat-

in the indictment brought by the grand jury against him.

"THE COURT: All right, sir.

"Which count is that?

"MR. BARROW: Number 2, the second count, your Honor.

"THE COURT: Count Number 2. All right, sir.

"William Dove Williams, you have heard your counsel advise the Court that you wish to change your plea to Count Number 2 of the indictment.

"Heretofore, on November the 8th, 1967, in this Court you entered a plea of not guilty to each and every count of the indictment.

"It is now your desire and wish to change your plea as to Count Number 2 of the indictment?

"THE DEFENDANT: Yes, sir, your Honor.

"THE COURT: And what plea do you wish to enter to Count Number 2 of the indictment?

"THE DEFENDANT: I would like to plead guilty, your Honor.

"THE COURT: Enter a plea of guilty?

"THE DEFENDANT: Yes, sir.

"THE COURT: Now, you have discussed this matter thoroughly with your counsel?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you understand the charge which is made against you in Count Number 2 of the indictment?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: Is there any particular reason why you have determined to change your plea?

"THE DEFENDANT: There's not any particular reason. Just—it's more than one reason, your Honor, but I think the reason is sufficient to admit—to change my plea.

"THE COURT: The reason—what?

"THE DEFENDANT: The reason why is enough to make me change my plea.

"THE COURT: What was the reason?

"Did anyone mistreat you in any way?

"THE DEFENDANT: No, sir, your Honor.

"THE COURT: Did anyone threaten you?

"THE DEFENDANT: No, sir.

"THE COURT: Did anyone offer any violence toward you?

"THE DEFENDANT: No, sir, your Honor.

"THE COURT: Did anyone make any promises to you?

"THE DEFENDANT: No, sir, your Honor.

"THE COURT: Did anyone tell you you would be granted probation?

"THE DEFENDANT: No, sir, your Honor.

"THE COURT: Did anyone tell you you would receive a lesser sentence?

"THE DEFENDANT: No, sir, your Honor.

"THE COURT: Was any inducement of any kind held out to you in order to have you change your plea?

"THE DEFENDANT: No, sir, your Honor.

"THE COURT: Now, is the reason the fact that you realize you are guilty of the offense?

"Is that the reason?" Tr., pp. 3–6 And so it went. . . .

12. The suggested American Bar Association standards include the following:

"1.5 Determining voluntariness of plea.

"The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. *By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court.* The court should then address the defendant personally and determine whether any other promises or any force or threats were used to obtain the plea." (Emphasis added.) Standards Relating to Pleas of Guilty, Part I p. 29 (A.B.A. Project on Minimum Standards for Criminal Justice, 1967).

ter is, after all, public business, and we deplore the hypocrisy of silent pretense that it has not occurred.[13] Here it seems rather obvious that in return for pleading guilty to one count permitting the court ample latitude for adequate punishment (ten years), the prosecutor agreed, quite properly we think, to dismiss the other counts.[14] Why not say so? Such disclosure would enable the trial judge to exercise a proper controlling influence and to reject any such arrangement he deemed unfair either to the defendant or to the public. *Cf.* Bailey v. MacDougall, 392 F.2d 155 (4th Cir. 1968). See Standards Relating to Pleas of Guilty, Part III pp. 60–78 (A.B. A. Project on Minimum Standards for Criminal Justice, 1967).

On remand, the district court will consider whether Williams is now an eligible offender. If it determines he is not, it will afford him reasonable opportunity to remove the impediment to his eligibility. If he is eligible or becomes so, the district court will then consider, in the exercise of its sound discretion, whether Williams should be granted the benefits of sentence under the Narcotic Addict Rehabilitation Act of 1966.

Sentence vacated and remanded.

WINTER, Circuit Judge (dissenting):

To me this case presents simple issues which, irrespective of one's humanitarian motives, should be resolved by affirmance. They scarcely warrant a homily on plea bargaining. The district judge had no discretion to sentence defendant under the Narcotic Addict Rehabilitation Act of 1966, 18 U.S.C.A. § 4251 *et seq.* He cannot, therefore, be reversed for failure to exercise nonexistent discretion. Nor was his general discretion to *grant continuances abused by his failure* to consider postponing sentence to enable counsel, possibly, to qualify defendant for disposition under the Act.

When defendant came on for sentencing, the district judge was in possession of a presentence report which disclosed that there was pending against defendant in a state court in New York the charges of "felonious possession of narcotic drug" and "unlawful possession of hypodermic needle."[1] The correctness of this statement is not in issue. In argument we were supplied with a certificate of the Supreme Court of the State of New York, County of New York, which showed that an indictment containing two counts charging these offenses was returned September 18, 1967, and that the case was disposed of on

---

13. "If the judge, the prosecution, or the defense counsel makes a statement in open court that is contrary to what he has been led to believe, especially as to promises by the prosecutor or his defense counsel, * * * [the defendant] would no more challenge the statement in open court than he would challenge a clergyman's sermon from the pulpit." Trebach, The Rationing of Justice 159–60 (1964).

14. It will be noted that Williams was not asked about this specific possibility. *See* note 11, *supra*.

1. The presentence report described the circumstances of these charges as follows: "On July 5, 1967, at 7:15 a.m. at the Port Authority Bus Terminal, 625 8th Ave., N. Y. C., in the men's toilet, the arresting officer observed Martin Fortson and Williams in one toilet booth. Williams had placed a hypo-

dermic needle into his left arm and Fortson was standing next to him. Upon their arrest, Williams was found in possession of 58 glassine envelopes containing heroin, in his left front pants pocket. The charges against Fortson were dismissed on 7–5–67. Williams was released on $100.00 cash bail on August 22, 1967. He was indicted under Docket No. 3165–67 on 9–18–67 and due to his failure to appear in court a Bench Warrant was issued 10–13–67. At the time of his arrest, he gave his address as 699 Alabama Avenue, Brooklyn."

After further review of defendant's extensive record, the report stated: "He returned to New York City in July of 1967, became involved with the authorities, *and that charge is still pending at this time.*" (Emphasis supplied.)

July 3, 1968, by defendant's plea of guilty to the count charging felonious possession of a narcotic drug, with defendant sentenced to the penitentiary of the City of New York for a term of one year, execution of sentence suspended *without* probation. In oral argument, counsel for defendant admitted that an undisposed of felony charge was pending against defendant when he appeared for sentencing before the district judge.

Equally beyond dispute is the rule that the district judge properly might consider and rely upon truthful statements in the presentence report, unhampered by the rules governing admissibility at trial. Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1948).

Whether in fact known to the district judge, defendant was at the time of sentence ineligible to be sentenced under the Act. Throughout the Act its various provisions apply only to one who is an "eligible offender" and that phrase is defined in § 4251(f).[2] As a reading of the text will demonstrate, the definition of "eligible offender" excludes one "against whom there is pending a prior charge of a felony which has not been finally determined."[3] At the time of sentencing before the district judge defendant was precisely within the exclusion. It follows that he was not an "eligible offender" to whom the Act could have any application. Meyers v. United States, 388 F.2d 307 (9 Cir. 1968). It is axiomatic, therefore, that the district judge had no discretion to sentence him under the Act and could not be guilty of failing to exercise discretion which he did not possess.[4] The plain logic of the situation is not to be avoided by labeling the uncontroverted facts "fortuitous," or to be diluted by vague notions of unfairness.

The majority finds further error in the failure of the district judge to consider postponing sentence in order to permit defendant, through his counsel, to attempt some favorable disposition of the pending New York charges so as to qualify him as an "eligible offender."[5] I agree that there is "nothing in the

2. "(f) *'Eligible offender'* means any individual who is convicted of an offense against the United States, but does not include—

   (1) an offender who is convicted of a crime of violence.

   (2) an offender who is convicted of unlawfully importing or selling or conspiring to import or sell a narcotic drug, unless the court determines that such sale was for the primary purpose of enabling the offender to obtain a narcotic drug which he requires for his personal use because of his addiction to such drug.

   (3) *an offender against whom there is pending a prior charge of a felony which has not been finally determined* or who is on probation or whose sentence following conviction on such a charge, including any time on parole or mandatory release, has not been fully served: *Provided,* That an offender on probation, parole, or mandatory release shall be included if the authority authorized to require his return to custody consents to his commitment.

   (4) an offender who has been convicted of a felony on two or more prior occasions.

   (5) an offender who has been committed under title I of the Narcotic Addict Rehabilitation Act of 1966, under this chapter, under the District of Columbia Code, or under any State proceeding because of narcotic addiction on three or more occasions." (emphasis supplied).

3. 18 U.S.C.A. § 4251(d) defines felony to include any offense in violation of a law of the United States classified as a felony under the Criminal Code and any offense in violation of a law of any state "which at the time of the offense was classified as a felony by the law of the place where that offense was committed."

4. The California decisions cited by the majority are inapposite. Even from their description in the majority opinion, it is apparent that, unlike defendant here, the convicted persons could have been sentenced under the California rehabilitation statute.

5. The finding is actually two-fold. The majority also finds error in the failure of the district judge to exercise his discretion as to "whether to commit him to the custody of the Attorney General for examination under 18 U.S.C. § 4252." How the latter could be error I fail to see.

statutory scheme that would prevent a district judge from continuing the sentencing procedure for a reasonable interval to permit a defendant to attempt disposition of a felony charge pending in some other jurisdiction, that would otherwise disqualify him from consideration" under the Act, but the logic for the leap to the conclusion that there was error in the failure, *sua sponte,* to consider if sentencing should be postponed eludes me. The district judge was not requested to postpone sentencing. Absent such a request, he reasonably retained sufficient docket control to set for final disposition a case in which sentencing had already been postponed four weeks. This is not a situation where, even if a request were made, the district judge would be required to grant a continuance.

In essence, the Court now holds that, even in the absence of a request for a continuance, every district judge has the duty in every case to consider the postponement of sentencing to afford counsel an opportunity to create a state of facts which may influence the district judge in sentencing to give more lenient or more humane disposition. Must a district judge, therefore, on his own motion, consider postponing sentencing to permit or to require transfers under Rule 26, Fed.R.Crim.P., because he may make a more lenient overall disposition of the transferred cases than if they were disposed of in separate jurisdictions? Must a district judge, on his own motion, consider postponing sentencing of youthful offenders and insist that counsel obtain a birth certificate for each in the hope that, possibly, some offender may be shown to warrant disposition as a juvenile delinquent? The answers which the Court's holding in this case suggests are, indeed, new and novel doctrine. To me the burden it places on district judges is insupportable.

This is a singularly inappropriate case in which to announce this new doctrine. The majority states, "[p]robably New York suspended the one-year sentence because Williams had received a ten-year indeterminate sentence in the federal court." I would venture the correction that New York *undoubtedly* did just that. Defendant had one previous conviction in New York for possession of marijuana cigarettes and three other convictions for offenses, at least one of which was related, in the sense that defendant sought funds to support his addiction. For each of the four convictions, defendant has served varying terms of thirty days to six months. From the fact of a suspended sentence *without probation,* to me the inference is inescapable that New York understandably surrendered her interest in the disposition of an offense against her law to the United States, in the belief of what federal disposition had been made. A different federal disposition may have motivated New York to adopt a more stringent attitude, with the result that defendant would not have been an "eligible offender" under other exclusions contained in § 4251(f). Resentencing, after the fact, on the basis of New York's apparent leniency is neither warranted nor justified.[6]

I would affirm.

By its terms § 4252 permits a commitment to the custody of the Attorney General for study and report of "an eligible offender" believed to be an addict. Defendant was not, I repeat, an "eligible offender." How the district judge could do what the law says he may not do or why he should be required to consider doing the impossible, I cannot surmise.

6. The majority apparently seeks to avoid this unjustified advantage to defendant by likening the suspension of service of sentence without probation to a sentence not fully served. The legal effect would be to require New York's consent to defendant's disposition under the Act as a condition precedent to such disposition. How, and under what circumstances, defendant could be required to serve his suspended sentence I cannot visualize. I would conclude that defendant's sentence, legally and for practical purposes, was fully served. This is the basis for my apprehension that defendant may be resentenced in derogation of the interests of New York.