**L. D. HILLIARD, Petitioner-Appellant,**
v.
**Dr. George J. BETO, Respondent-Appellee.**

No. 72–1869
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 1, 1972.

On Petition for Rehearing and Re-hearing En Banc Denied
Dec. 1, 1972.

———◆———

Harry H. Walsh, Huntsville, Tex., William T. Armstrong, Staff Atty., Weldon, Tex., for petitioner-appellant.

Crawford Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Robert C. Flowers, Asst. Atty. Gen., E. L. Hamilton, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of

New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

JOHN R. BROWN, Chief Judge:

Petitioner was convicted on his plea of guilty and sentenced to life imprisonment on a Texas charge of rape. Subsequently he filed a petition for writ of habeas corpus relief in the State trial court alleging that his plea had been induced by an unkept promise of the District Attorney that he would receive a five year sentence if he would enter a plea of guilty. The trial court's dismissal of the petition without an evidentiary hearing or even any response being filed by the State was accepted by the Texas Court of Criminal Appeals. Thereafter petitioner filed the present § 2254 application for habeas corpus relief in the Federal District Court. That application was similarly dismissed without Show Cause Order or further fact development, and this appeal followed. We vacate and remand.

The basis for denying relief adopted by both the State and Federal Courts was the fact that during the guilty plea hearing the petitioner had affirmatively responded that his plea had not been induced by any threats or promises. Before Santobello v. New York, 1971, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, such an approach may well have been justified by the decisions of this Court, for we had often held that when a defendant at sentencing tells a trial judge that no "deal" has been made, he cannot later claim inducement or unfilled promises to vitiate his plea. Alvereze v. United States, 5 Cir., 1970, 427 F.2d 1150; Rosenbaum v. United States, 5 Cir., 1969, 413 F.2d 298; Pursley v. United States, 5 Cir., 1968, 391 F.2d 224; United States v. Frontero, et al., 5 Cir., 1971, 452 F.2d 406. But see Ross v. Wainwright, 5 Cir., 1971, 451 F.2d 298; United States v. Battle, 5 Cir., 1971, 447 F.2d 950.

Santobello, however, requires that we take a second look at our prior decisions. In Santobello the Supreme Court recognized, for the first time directly rather than obliquely,[1] the essential role in the administration of justice played by the "plea bargaining" process and the consequent responsibility on the courts to vouchsafe the institution by insisting upon absolute fairness in its operation. In that case one assistant district attorney in the prosecutor's office had inadvertently breached an unquestioned agreement made by a different attorney on the staff relating to the sentencing of the defendant. During the guilty plea hearing, the defendant had made the traditional response that his plea was not the product of any inducements or promises. Nevertheless, the Supreme Court remanded the case for further proceedings, *despite this record answer,* because it was clearly established that an agreement had in fact been reached and had—no doubt unwittingly—been breached.

█ In view of *Santobello,* then, it is clear that the defendant's denial of promises or inducements during the guilty plea hearing cannot totally foreclose further inquiry. Cf. James v. Smith, 5 Cir., 1972, 455 F.2d 502; Unit-

---

1. Some circuits had been embracing this attitude for years. See, e. g., United States v. Williams, 4 Cir., 1969, 407 F.2d 940, 948–949:

   "We think that plea bargaining serves a useful purpose both for society and the prisoner and is a permanent part of the criminal courtroom scene, but we think that it ought to be brought out into the open. We do not suggest that defense counsel and the prosecutor actually conduct their negotiations in open court, but we do urge that in this circuit a full and complete disclosure of such negotiations be announced to the court and made a part of the record. The matter is, after all, public business and we deplore the hypocrisy of silent pretense that it has not occurred. Here it seems rather obvious that in return for pleading guilty to one count of permitting the court ample latitude for adequate punishment (ten years), the prosecutor agreed, quite properly we think, to dismiss the other counts. Why not say so? Such disclosure would enable the trial judge to exercise a proper controlling influence and to reject any such arrangement he deemed unfair either to the defendant or to the public. Cf. Bailey v. MacDougall, 392 F.2d 155 (4th Cir. 1968). See Standards Relating to the Pleas of Guilty, Part III, pp. 60–78 (A.B.A. Project on Minimum Standards for Criminal Justice, 1967)."

   (Footnotes omitted).

ed States v. Battle, 5 Cir., 1971, 447 F. 2d 950. There is a good deal being written stating that often these disclaimers have been mere "ritual"[2] (Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Proposed Amendments to Criminal Rule 11, 52 F.R.D. 409, 426 (1971)) generated, so it is said, "out of fear that a truthful response would jeopardize the bargain."[3] Walters v. Harris, 4 Cir., 1972, 460 F.2d 988. In point of fact, examples are many where a defedant has denied the existence of a bargain which subsequent events reveal unequivocally to have occurred. See, e. g., White v. Gaffney, 10 Cir., 1970, 435 F.2d 1241; Jones v. United States, 9 Cir., 1970, 423 F.2d 252; United States v. Williams, 4 Cir., 1969, 407 F.2d 940; Brown v. Beto, 5 Cir., 1967, 377 F.2d 950; Shelton v. United States, 5 Cir., 1957, 242 F.2d 101, 115 (Tuttle, J., dissenting);[4] Sorrenti v. United States, 5 Cir., 1962, 306 F.2d 236; James v. Smith, *supra;* Walters v. Harris, *supra.*

We do not suggest for a moment that prosecutors, defense counsel or defendants have acted dishonestly or unethically in this regard, but simply that these examples and the *Santobello* decision require that we recognize[5] that the "informal and largely invisible manner"[6] in which plea discussions and agreements have traditionally occurred in the past may have created an environment[7] in which "the defendant's responses alone to a general Rule 11 [or

2. "Covert bargains excite suspicion; and arrangements in which palpably false answers to ritualistic questions are solemnly recorded reflect adversely upon all who participate." Jones v. United States, 9 Cir., 1970, 423 F.2d 252, 255.

3. "If the judge, the prosecution, or the defense counsel makes a statement in open court that is contrary to what he has been led to believe, especially as to promises by the prosecutor or his defense counsel, * * * [the defendant] would no more challenge the statement in open court than he would challenge a clergyman's sermon from the pulpit." Trebach, The Rationing of Justice 159–60 (1964).

4. "It is generally known that the great bulk of criminal cases are disposed of by pleas of guilty made after some discussion between the defendant and/or his counsel and the prosecuting attorney in which the latter frequently makes some commitment as to the sentence he will recommend or as to other charges or prosecutions he will drop; if this were not so, or if this Court holds that it may not be so, there would be few inducements for any person to plead guilty." This case had an interesting history. The original panel on a majority of Judges Rives and Brown had set aside Shelton's plea of guilty (which had unquestionably been the product of a plea bargain agreement) on the grounds that "Justice and liberty are not the subjects of bargaining and barter." Shelton v. United States, 5 Cir., 1957, 242 F.2d 101, 113. Judge Tuttle dissented, 242 F.2d 113, urging that a plea was not necessarily involuntary simply because it resulted from plea negotiations. On rehearing en banc Judge Tuttle's position prevailed, with Judges Rives and Brown dissenting. Shelton v. United States, 5 Cir. (en banc), 1957, 246 F.2d 571. On Petition for Writ of Certiorari in the Supreme Court, however, the Solicitor General confessed error and the Supreme Court reversed this Court's en banc judgment. Shelton v. United States, 1958, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579. The Supreme Court ultimately adopted Judge Tuttle's position, however, quoting his original dissent (later en banc majority opinion) favorably in Brady v. United States, 1970, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed. 2d 747, 760, which accepted and acknowledged the validity of pleas based on negotiations and agreements.

5. Judges must not be blind to "what all others see." Hamer v. Campbell, 5 Cir., 1966, 358 F.2d 215; Gomillion v. Lightfoot, 5 Cir., 1959, 270 F.2d 594, 608 (dissenting opinion), rev'd, 1960, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110; United States v. Mississippi, S.D.Miss., 1964, 229 F.Supp. 925, 998 (dissenting opinion), rev'd, 1965, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717; Brooks v. Beto, 5 Cir. (en banc), 1966, 366 F.2d 1, 10, cert. denied, 1967, 386 U.S. 975, 87 S.Ct. 1169, 18 L.Ed.2d 135.

6. Advisory Committee Notes, Proposed Amendments to Criminal Rules, 52 F.R.D. 409, 426.

7. The Fourth Circuit in pungent language we neither approve nor disapprove describes it this way. "Rule 11 is intended to produce a complete record of the factors relevant to the voluntariness of the guilty plea and, thereby, to forestall subsequent controversy as to voluntariness.

Rule 11 type] inquiry cannot be considered conclusive evidence that no bargaining has occurred." *Walters, supra,* 460 F.2d at 993.[8]

Moreover, in the case before us the extrinsic facts surrounding defendant's prior disclaimer of inducements by promise of leniency practically compelled the given response. For here, before the defendant asserted that he had not been promised anything to plead guilty, the Trial Court informed the defendant that if he admitted that any promises of leniency had been made the guilty plea would not be accepted.[9] Defendant stood before the Court indicted for rape—a capital offense—and had been warned by his attorneys of the possibility of receiving the death penalty should his plea of guilty not be accepted and he be required to face a jury. On the other hand, the District Attorney had (allegedly) promised him that if his plea of guilty were accepted, he would receive a five year sentence. Under the circumstances we cannot at this time rule out the likelihood that the defendant tailored his record responses to the trial court's inquiries to assure their acceptance—even to the extent of being less than truthful on the record with the trial court if that were necessary to consummate the plea agreement.

Under the circumstances of this case, the Supreme Court mandate that plea bargaining "be encouraged," and the *Santobello,* Judicial Conference and ABA[10] acknowledged reality that to accomplish this objective the plea bargaining institution must be safeguarded from abuse in the form of unkept promises, we remand this case for a development of the facts relating to the alleged plea bargain. Ross v. Wainwright, 5 Cir., 1971, 451 F.2d 298; United States v. Battle, 5 Cir., 1971, 447 F.2d 450; James v. Smith, 5 Cir., 1972, 455 F.2d 502.

■ This does not forecast an evidentiary hearing in every case in which the prisoner merely asserts an unkept bargain. The total record may considerably reduce the issues or expose the claim to be groundless and in any case it will sharply reduce the nature of the hearing in terms of the necessity for court appearances and the like.[11]

Vacated and remanded.

---

The purpose and spirit of the rule is diametrically opposed to the unfortunate tradition of invisible plea bargaining. It is this tradition that causes trouble here. We are not unaware that plea bargaining often occurs without the knowledge of the court. The result is an absurdity: the trial judge knows everything about the plea except what truly motivates it. We have previously recognized plea bargaining as an ineradicable fact. Failure to recognize it tends not to destroy it but to drive it underground. We reiterate what we have said before: that when plea bargaining occurs it ought to be spread on the record and publicly disclosed. United States v. Williams, 407 F.2d 940 (4th Cir. 1969)." Raines v. United States, 4 Cir., 1970, 423 F.2d 526, 530.

8. See also Reed v. United States, 9 Cir., 1971, 441 F.2d 569; United States v. Simpson, 1970, 141 U.S.App.D.C. 8, 436 F.2d 162; United States v. McCarthy, 1 Cir., 1970, 433 F.2d 591; Trotter v. United States, 2 Cir., 1966, 359 F.2d 419.

9. In refusing habeas corpus relief the State trial court noted that, "Upon the entering of [the guilty] plea, [defendant] admitted that he had not been coerced to plead guilty by any means; he had not been promised anything to plead guilty, and that the applicant or petitioner was *informed by the Court that all of the above mentioned must be true or his guilty plea would not be accepted.*" (Emphasis added).

10. See ABA Standards Relating to Pleas of Guilty § 3.1 (approved draft 1968).

11. To avoid attacks of this kind on future sentences trial courts might find help in the Federal Judicial Center's recommendation or the Fourth Circuit's prescribed procedure: The Bench Book for use by United States District Judges now suggests that the defendant be asked by the Court "if he believes there is any understanding or if any predictions have been made to him concerning the sentence

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

BY THE COURT:

A majority of the Judges in active service, on the Court's own motion, having determined to have this case reheard en banc.

It is ordered that this cause shall be reheard by the Court en banc on briefs without oral argument. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

he will receive." Bench Book for United States District Judges, Federal Judicial Center (1969) at 1.05.3.

The Fourth Circuit suggested:

"District Judges in this circuit ought henceforth to expand their Rule 11 inquiry substantially as follows:

I now inquire of the United States Attorney and of the prisoner and his counsel whether or not there have been plea negotiations. Before permitting you to respond, I assure you that the United States Supreme Court has spe- cifically approved plea bargaining and has said it is 'an essential component of the administration of justice . . . to be encouraged.' You may, therefore, advise me truthfully of any plea negotiation without the slightest fear of incurring disapproval of the court.

We are inclined to the viewpoint that a negative response to such an inquiry would finally conclude the subject matter and prevent subsequent litigation."

*Walters, supra,* 460 F.2d at 993.