Hollis Wayne JUSTICE,
Petitioner-Appellee,

v.

STATE OF TEXAS,
Respondent-Appellant.

No. 75–2615
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 14, 1975.

Paul R. Gavia, Asst. Atty. Gen., John L. Hill, Atty. Gen., Austin, Tex., for respondent-appellant.

John E. Skogland, San Antonio, Tex. (Court-appointed), for petitioner-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges:

PER CURIAM:

This is an appeal by the State of Texas from a district court judgment granting a writ of habeas corpus to Hollis Wayne Justice. We affirm the judgment of the district court.

In a Texas state court in 1970, appellee Justice was convicted on a plea of guilty to a charge of robbery by assault. He was sentenced to 25 years imprisonment, to run concurrently with several other sentences totaling 45 years which he was then serving on state charges in Oklahoma. In December, 1973, as a result of his actions during a prison riot, Justice was paroled by the Oklahoma authorities. Oklahoma had no power, however, to relieve him of his Texas sentence, and so he was remanded to the custody of Texas Department of Corrections.

Justice then filed a habeas corpus petition in Texas state court, alleging that his 1970 guilty plea had been induced by a plea bargain whereby the Texas prosecutors had agreed that his sentence would run concurrently with the Oklahoma sentences and that his parole would be determined by Oklahoma authorities. He argued, in effect, that his transfer back into a Texas prison after his Okla-

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

homa parole was a miscarriage of justice. Without an evidentiary hearing, the Texas court denied relief, and its action was upheld without written order by the Texas Court of Criminal Appeals on September 18, 1974.

Justice filed a habeas petition in federal district court in November, 1974. In April, 1975, that court held a full evidentiary hearing, from which it found that the terms of the 1970 plea bargain were as alleged by Justice—i. e., that the state had agreed that the question of his parole was to be determined by the Oklahoma authorities. On these findings, the district court concluded that the state had breached the plea bargain, since Texas failed to release Justice when Oklahoma paroled him. The court therefore ordered the 1970 conviction overturned.

■ A careful review of the briefs and record in this case leaves us unable to say that the district court's findings of fact regarding the terms of the plea bargain were clearly erroneous. The court's decision was based largely on its opinion of the credibility of the witnesses, especially that of Justice himself. An appellate court is of course in no position to second guess a trial court determination of witness credibility. In this situation we could reverse only if Justice's story, as it appears before us, was as a matter of law incredible—i. e., if other undisputed facts show that he simply could not have been telling the truth.[1]

The surrounding circumstances here, however, do not make his account of the plea bargaining improbable—if Justice raised the question of how parole was to be determined, as he asserts and as the state does not deny, might not the state, eager to dispose of the case,[2] agree to let parole be determined by the Oklahoma authorities, since absent extraordinary circumstances he would not be eligible for Oklahoma parole until long after he would be eligible for Texas parole?

■ The state argues that we should be persuaded that no concurrent parole was bargained for by the record of the 1970 state court guilty plea hearing, wherein the following exchange took place:

> The Court: You are not pleading guilty because of any fear, threats or coercion, any false or delusive hopes of pardon, or any promises made to you.
>
> Justice: No sir.

The state admits, however, that some plea bargaining took place, at least to the extent that Justice was promised concurrent sentences. We find unpersuasive the state's argument that this "formalistic recitation,"[3] although admittedly inaccurate in that concurrent sentences were offered, should be impervious to a trial court's finding, after an evidentiary hearing, that it was inaccurate in other respects.

The state also objects to the trial court's characterization of a sentence in

---

1. Cf. *Chalk v. Beto*, 5 Cir. 1970, 429 F.2d 225, 227, which, in affirming the grant of a writ of habeas corpus, set out the general rule in cases where factors other than witness credibility may be central:

    . . . we emphasize the rule that the burden of showing findings of the district court to be clearly erroneous is a heavy one which, to be sustained, requires a clear demonstration that such findings are without adequate evidentiary support in the record, or were induced by an erroneous view of the law. *Chaney v. City of Galveston*, 5 Cir., 1966, 368 F.2d 774, 776.

2. Justice's co-defendant in the 1970 case refused to accede to the state's request that he enter a guilty plea, and charges against him were dismissed.

3. *See Gallegos v. United States*, 5 Cir. 1972, 466 F.2d 740, 742:

    *Machibroda v. United States* [1962, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473] and *Santobello v. New York* [1971, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427] teach that formalistic recitations in the record that indicate the plea was "voluntary" cannot prevent the person convicted from complaining if the prosecutor later breaches the agreement that induced the plea. *See Hilliard v. Beto*, 5 Cir. 1972, 465 F.2d 829.

    *Gallegos* was subsequently reheard the Fifth Circuit *en banc*. The en banc court withdrew the original panel opinion, but reached the same result by relying on only one of the three grounds relied upon by the original panel. 476 F.2d 1281 (5 Cir. 1973).

the state's answer to the habeas petition as an "admission." That sentence reads:

> Before pleading guilty Petitioner specifically asked the Texas prosecutor about parole consideration and "good time" credit and, as Petitioner states in his brief, was told, "that will be up to those people up there."

We note, also, that the state said in its closing argument before the trial court:

> The plea bargainings, from the evidence, extended over those four months, and the Petitioner would have us believe that nothing was done until the day of the trial when he walked in that morning and explained to the prosecutor that he wanted to have his parole and good time credit determined by the people in Oklahoma. The prosecutor, after four or five months of plea bargaining, said "It's up to those people up there." Is that any different than saying it's out of my hands or I have nothing to do with that? I don't think so, and I think we are putting a lot of weight into the words that were spoken that day and strained interpretation to say that after five months of plea bargaining, that that ten-word remark, or less, was a bargain on behalf of the State.

These passages might well be read to contain technical admissions by the state that Justice was told that parole would be "up to those people up there." The state now vehemently denies that it made any such admission, and suggests that the trial court's mischaracterization of these passages tainted its findings with clear error. We need not decide the question of whether a technical admission was made, since we find that other evidence, in particular the testimony of Justice, is sufficient to support the district court's finding that the statement was made. Indeed, whatever the correct characterization of these passages, the state has never actually denied that such a statement may have been made to Justice by one of the prosecutors[4]—rather, the state has argued about the meaning of that statement. The state has not convinced us that the district court was clearly erroneous either in finding that the statement was made, or in construing it to mean that Justice had been offered concurrent paroles by the State of Texas. We therefore affirm the grant of the writ.

Affirmed.

---

4. After the evidentiary hearing in April, 1975, the state moved for a rehearing on the basis of the affidavit of Assistant District Attorney John Quinlan. Mr. Quinlan was apparently the central figure in conducting plea negotiations on behalf of the state at the 1970 trial. He had not testified at the hearing. Quinlan offered to testify that he had never discussed the bargain with the defendant personally, but rather had conducted all negotiations through Mr. Struve, defendant's attorney (now deceased), and that he (Quinlan) had never offered concurrent paroles. The district court, in denying the motion for a rehearing, noted that Quinlan's affidavit was reconcilable with the court's original findings of fact, which were that one of the several prosecutors involved in the 1970 case had led Justice and Struve to believe that part of the bargain was that parole from the Texas sentence would be contemporaneous with parole from the Oklahoma sentences, as determined by the Oklahoma authorities.