UNITED STATES of America, Appellee,

v.

Robert A. STALNAKER, Appellant.

No. 75–2317.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 14, 1976.

Decided Nov. 3, 1976.

P. Michael Pleska, Charleston, W.Va. [Court-appointed] (Richlin Brown, Bowles, Kauffelt, McDavid & Graff, Charleston, W.Va., on brief), for appellant.

John A. Field, III, U. S. Atty., Charleston, W.Va. (Wayne A. Rich, Jr., Robert B. Allen, Asst. U. S. Atty., Charleston, W.Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Robert A. Stalnaker pleaded guilty to two counts of an indictment charging him with selling heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. His appeal raises only a question about the validity of the sentence imposed by the district court. It denied Stalnaker's motion for special sentencing under the provisions of the Narcotic Addict Rehabilitation Act, 18 U.S.C. §§ 4251 et seq. (NARA), and sentenced him instead to concurrent terms of ten years followed by the mandatory special parole term of three years required by 21 U.S.C. § 841(a)(1).

Because we conclude that the district court employed an erroneous legal standard in declining to sentence Stalnaker under NARA, we vacate the sentences and remand for resentencing.

## I.

At Stalnaker's arraignment, his guilty pleas were accepted; and, after the district judge indicated that he would request a presentence investigation and report, Stalnaker's counsel requested that Stalnaker be sentenced under NARA. The government, however, asserted that its evidence did not indicate that defendant was an addict. The district court concluded to defer acting upon defendant's request and indicated that it would like to arrange for defendant to be examined by a local expert to assist the court in determining defendant's eligibility for sentencing under NARA.

▌ The fact of addiction was a significant one. NARA is legislation designed to assist drug addicts caught up in the web of crime and to return them to normal and productive lives. By its terms, 18 U.S.C. § 4252 conditions the applicability of NARA upon the district court's belief that "an eligible offender is an addict." Thus, a showing sufficient to induce belief in the district court that an offender is an "addict" is basic.[1] Additionally, the "addict" must be shown to be an "eligible offender." The definition of "eligible offender" includes a number of factors, but, as will be seen, all important for this appeal is the provision that a seller of narcotics may be an "eligible offender" only if "the court determines that such sale was for the *primary* purpose of enabling the offender to obtain a narcotic drug which he requires for his personal use . . . ." 18 U.S.C. § 4251(f)(2). (Emphasis supplied.)

When the district court next convened, two days after the pleas were accepted, the district judge stated that he had examined the papers and thought about the matter and he had concluded that although defendant had some drug dependence, he was not an addict. Therefore, the court stated that it would not order his examination before sentencing and would sentence him after the presentence investigation was completed.

Defendant came on for sentencing approximately two months later. Since his last court appearance, he had filed a formal motion asking the district court to reconsider its prior ruling that defendant was not an "addict" within the meaning of NARA. The motion was supported by a medical affidavit and a monograph on Vietnam drug abuse. In open court, defendant's counsel asked that defendant be sentenced to the custody of the Attorney General under § 4252[2] of NARA; but the district court denied the request, saying:

Drugs turned this young man—from the letters I get and the reports I get—from a pleasant, intelligent, personable

---

1. "Addict" is defined by § 4251(a), as follows:

"Addict" means any individual who habitually uses any narcotic drug as defined in section 102(16) of the Controlled Substances Act so as to endanger the public morals, health, safety, or welfare, or who is or has been so far addicted to the use of such narcotic drugs as to have lost the power of self-control with reference to his addiction.

By this definition, the word "addict" includes not only a user of narcotics, but also one who has lost his power of self-control over such use.

2. 18 U.S.C. § 4252:

If the court believes that an eligible offender is an addict, it may place him in the custody of the Attorney General for an examination to determine whether he is an addict and is likely to be rehabilitated through treatment. The Attorney General shall report to the court within thirty days; or any additional period granted by the court, the results of such examination and make any recommendations he deems desirable. An offender shall receive full credit toward the service of his sentence for any time spent in custody for an examination.

Following this section, § 4253 provides:

(a) Following the examination provided for in section 4252, if the court determines that an eligible offender is an addict and is likely to be rehabilitated through treatment, it shall commit him to the custody of the Attorney General for treatment under this chapter, except that no offender shall be committed under this chapter if the Attorney General certifies that adequate facilities or personnel for treatment are unavailable. Such commitment shall be for an indeterminate period of time not to exceed ten years, but in no event shall it exceed the maximum sentence that could otherwise have been imposed.

(b) If, following the examination provided for in section 4252, the court determines that an eligible offender is not an addict, or is an addict not likely to be rehabilitated through treatment, it shall impose such other sentence as may be authorized or required by law.

young man into an insensitive dull person, which shows what heroin can do.

It is a sad thing, real sad. From reading Dr. Kitching's report, I would agree that probably the defendant is an addict. He has attempted to take the treatment and kick the habit and been unable to. Dr. Kitching expresses doubt as to whether he would be able to also. So I can't say that he is likely to be rehabilitated through treatment, except that I should hope that he could be.

However, the evidence is clear that he didn't sell this for his own use only; he dealt in this at least to help support the habit of Mrs. Thaxton, his codefendant. It makes me sad to see a young man use heroin. It makes me angry to see anybody sell it to other people to get them in the same condition.

I am going to deny the motion to sentence under the NARA Act.

■ Thus, the district court ruled that while defendant was an "addict" within the meaning of § 4251(a),[3] it found him ineligible for sentencing under § 4252 because the sales of narcotics in which he participated were not consummated primarily to support his own habit.

While the district judge's statement was that the "evidence" showed that defendant sold heroin to support the habit of his codefendant, Mrs. Thaxton, there was, strictly speaking, no such evidence adduced in open court, although there were passing references to the fact in the statements of counsel at the various hearings. The presentence report, which was available to the district court and counsel before sentencing, contains no statements shedding light on the subject. However, a count of the indictment to which defendant pleaded guilty charged that "Roberta A. Thaxton and Robert A. Stalnaker, aided and abetted by each other" committed the crime of distributing heroin in violation of law, and a government agent testified that Mrs. Thaxton had

"pled guilty to the charges in this indictment."

In oral argument before us, defendant's counsel represented that, although not legally wed, Stalnaker and Mrs. Thaxton lived together, and both had a dependence on narcotics. Jointly, they procured narcotics. Some were consumed to support both drug habits, and some were sold to produce funds for future purchases. While the government did not admit the accuracy of these representations, it did not claim to be in possession of evidence to disprove them.

II.

■ Since we accept as correct the district court's finding that defendant was an addict, we think that defendant's sentence must be vacated and the case returned to the district court for an evidentiary hearing on the accuracy of the representations of defendant's counsel. If defendant can establish that his sales of narcotics were for the purpose of supporting the joint habit of him and Mrs. Thaxton, we think that he was an "eligible offender," notwithstanding that the sales supported joint habits and not solely that of defendant. Under such circumstances, the district court should resentence him unfettered by any misconception of the law.

It is true that, by the language of § 4251(f)(2), a seller of narcotics may be an "eligible offender" only if the "sale was for the *primary* purpose of enabling the offender to obtain a narcotic drug which he requires for his personal use . . . ." (emphasis added). But we think that the word "primary" must be read not only in the light of the broad remedial purpose of NARA, but also in the light of the facts of this case as they have been represented to us.

■ NARA was enacted in response to a presidential request for legislation to provide for the treatment and rehabilitation of

---

3. This ruling has substantial support in the record. There was evidence both that defendant was consuming a substantial quantity of heroin daily at the time of his arrest, and that

previous treatment to break his addiction had been unsuccessful in restoring his self-control over the use of narcotics.

narcotic addicts when they are charged with or convicted of offense against the United States. In the words of the President, adopted by the Congress: "The return of narcotic and marihuana users to useful, productive lives is of obvious benefit to them and to society at large." H.R.Rep. No. 1486, 3 U.S.Code Cong. and Adm.News, 89th Cong., 2d Sess. pp. 4245, 4249 (1966). In the words of the Committee, "the legislation represents a fundamental reorientation toward the problem of addiction." Id. at p. 4251. To that end, the Act provides for civil commitment of persons charged with narcotic offenses for treatment and rehabilitation and similar treatment by commitment under criminal process "for selected narcotic addicts convicted of any Federal offense." Id. at p. 4252. For those convicted of crime, the Act does not excuse punishment for commission of unlawful acts nor does it dilute the protection to the public of removing offenders from free society, but it superimposes the concepts of treatment and rehabilitation upon traditional punishment. Thus, we are persuaded that the language defining the class of convicted criminals who are eligible for sentencing under NARA should be construed to further the broad, remedial objectives of the Act.[4]

■ If, on remand, defendant shows a joint enterprise to support a joint need, carried on by man and woman living together (although unmarried), we think the eligibility requirement of "primary" purpose will have been met. If we were to give the word "primary" its literal meaning, a determination would be required of whether Stalnaker sold drugs principally because of his craving and need for them, or principally because of Mrs. Thaxton's craving and need for them and his paramount concern that her desires and needs be satisfied. Such a determination is unnecessary. If the proof supports the proffer, Stalnaker cannot be cast in the mold of a deliberate drug salesman, plying the habit of another for his own pecuniary gain. Rather, a substantial motivation for his engaging in traffic in drugs would be his own habit and this would be sufficient to make him an otherwise "eligible offender" without greater mathematical precision as to his own needs.

### III.

■ Because we are persuaded that the district judge, in exercising the discretion he possessed as to sentencing, erroneously concluded that, in a joint enterprise of the nature represented, defendant could not be eligible for sentencing under NARA, we vacate the sentence and remand for an evidentiary determination and further proceedings in accordance with the views expressed herein. We need not consider the government's argument that the sentence imposed is sustainable as a discretionary act,[5] as we recognized in United States v. Williams, 407 F.2d 940 (4 Cir. 1969), and United States v. Lee, Nos. 73–1143 and 73–1144, June 13, 1973 (4 Cir.). An exercise of discretion, however facially rational, cannot be sustained if premised upon a flawed legal foundation. Moreover, the district judge clearly indicated that his every desire was to bring about Stalnaker's cure and rehabilitation if it were possible to do.[6] This is all the more reason to require

---

4. The legislative materials discussed in United States v. Mason, 496 F.2d 1091, 1092 n. 1 (9 Cir. 1974), indicate that, as introduced, § 4251 would have defined eligibility under NARA for a seller of narcotics to one who engaged in a sale "for the sole purpose of enabling the individual . . . to support his own addiction." (Emphasis added.) From the substitution of the less restrictive "primary purpose" phrase in the final version, we infer not only an intent to extend eligibility, but an intent not necessarily to disqualify a seller who sells for mixed reasons.

5. It should be noted that the language of § 4252 is that the court "may" place a defendant in the custody of the Attorney General for examination and report.

6. Of major significance is that in committing defendant under a "straight" sentence, the district court ordered that defendant "be immediately taken to the Federal Institution at Lexington, Kentucky, or a comparable institution, for drug evaluation and treatment . . . ." In imposing the sentence, the court stated, "I am going to . . . provide, as best I can, that he immediately get such treatment as the

resentencing in the light of the views we have expressed herein.

*VACATED AND REMANDED.*

government has available." Throughout all of the proceedings, the district judge expressed a sympathy for the defendant's plight and a wish and desire to give him help.