460 F.2d 988
 Jewell Wesley WALTERS, Appellant,
v.
C. H. HARRIS, Warden, United States Penitentiary, Marion,
Illinois, Appellee.
Thomas Earl WINSTEAD, Appellant,
v.
UNITED STATES of America, Appellee.
Willie D. WREN, Appellant,
v.
UNITED STATES of America, Appellee.
 Nos. 15286, 71-2054, 71-2055.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1972.
Decided May 22, 1972.
 
 James R. Glover, Madison, Wis. (Hauser, Glover & Casey, S. C., Madison, Wis., on the brief) Court-appointed counsel, for appellants Walters, Winstead and Wren.
 Ryan C. Shealy, Asst. U. S. Atty. (John K. Grisso, U. S. Atty., on the brief) for appellee C. H. Harris.
 Edwin N. Kearns, Asst. U. S. Atty. (Warren H. Coolidge, U. S. Atty., on the brief) for the United States.
 Before BRYAN, WINTER and CRAVEN, Circuit Judges.
 CRAVEN, Circuit Judge:
 Willie D. Wren and Thomas Earl Winstead appeal from judgments of the United States District Court for the Eastern District of North Carolina. Jewell Wesley Walters appeals from a judgment of the United States District Court for the District of South Carolina. In each case the district court dismissed the appellant's petition filed pursuant to 28 U.S.C.A. Sec. 2255. Each prisoner argues on appeal that the district court erred by dismissing his petition without an evidentiary hearing in open court with the prisoner present. Section 2255 requires a "hearing" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."
 In Wren's case, we think that an adequate hearing was held and, therefore, affirm. In Winstead's case, the record has been expanded on appeal to include material that might prove to be grounds for relief. We remand his case to provide him the opportunity to request further appropriate proceedings on his expanded petition. In Walters' case, we find that the district court prematurely dismissed the petition without adequate inquiry into the validity of his claims. We remand his case to allow such inquiry. Additionally we order that one of Walters' concurrent sentences be vacated.
 
 I. Wren and Winstead
 
 1
 Wren and Winstead were codefendants and were represented by the same attorney, Charles H. Kirkman. They claim that the trial judge failed to notify them of their right to appeal in forma pauperis, as required by Rule 32(a) (2) of the Federal Rules of Criminal Procedure. They claim also that they were denied effective assistance of counsel because their attorney failed to inform them that they had a right to appeal and of the method for filing notice of appeal. Because the records in these cases conclusively show that Wren and Winstead are entitled to no relief on the basis of these claims, an evidentiary hearing on these claims is not required. The transcript of sentencing clearly shows that the trial court properly advised them of their right to appeal:
 
 
 2
 Under the provisions of Rule 32(a) (2) of the Federal Rules of Criminal Procedure, the Court is obligated to state to each of you that you have a right to appeal from this judgment and commitment within ten days and that if you are financially unable to pay the cost of an appeal to the Fourth Circuit Court of Appeals that upon proper application the Government will pay the cost of your appeal, that the clerk will enter your notice of appeal upon your request, which must be done within ten days.
 
 
 3
 Even if their attorney did not inform them about their right to appeal, they were not thereby denied effective assistance of counsel because they had been sufficiently informed by the above instruction of the trial judge. See Nelson v. Peyton, 415 F.2d 1154, 1156 (4th Cir. 1969).
 
 
 4
 Wren also claims that he was denied effective assistance of counsel because Kirkman allegedly promised to file a notice of appeal for him and failed and refused to do so. This claim, if true, would entitle him to relief. See Kent v. United States, 423 F.2d 1050 (5th Cir. 1970); Turner v. North Carolina, 412 F.2d 486 (4th Cir. 1969). The district judge, concerned with the alleged default, appointed new counsel to represent Wren in the 2255 proceeding, and entered an order for the deposition of Kirkman. Although Wren's request to be present at the taking of the deposition was denied, his court-appointed counsel cross-examined the witness extensively. We have examined the transcript of the deposition and it appears to be a complete and lucid account by Kirkman of his representation with respect to an appeal. The substance of his testimony is that he had advised Wren that an appeal would be futile, that Wren had agreed, and that Wren had not requested him to file a notice of appeal. The transcript is entirely adequate to support the district judge's findings that Wren, although advised of his right to appeal, did not request an appeal, and that his attorney did not indicate that he would note one.
 
 
 5
 We hold that the district court conducted a sufficient evidentiary hearing. Despite the fact that the district judge had no opportunity to observe the demeanor of either the prisoner or Kirkman, we think that the issue of credibility was fairly resolved. The court sensibly assumed that if the prisoner were present he would testify as he alleged in his petition, and Wren's former counsel was thoroughly examined and cross-examined. Congress has specifically provided that a court may entertain and determine a Section 2255 motion without the presence of the prisoner at the hearing. In Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), the Court stated that it did not imply that a prisoner always must be heard in open court and, indeed, called on district judges to exercise their common sense in determining effective procedures to achieve substantial justice.
 
 
 6
 To hold otherwise would, we think, establish an extremely burdensome and unworkable per se rule: that a simple allegation of a request to counsel to appeal and a failure to do so requires in every case a full-scale evidentiary hearing in open court with the prisoner present. This we decline to do.
 
 
 7
 Winstead claimed in his original motion that he was deprived of the effective assistance of counsel because "counsel failed to file a notice of appeal in his behalf." Read liberally, as we read all prisoners' pleadings, such an allegation suggests that Winstead may have asked counsel to note his appeal. We have permitted the record in Winstead's case to be expanded on appeal by letters from Winstead and Wren to their present attorney. In these letters Winstead makes clear that he was "under the assumption that Mr. Kirkman had appealed his sentence" and that he had "informed Mr. Kirkman to appeal," and Wren states that both he and Winstead asked Kirkman to file a notice of appeal for them. For purposes of this appeal, we assume, without deciding, that in open court both Wren and Winstead would so testify. Kirkman's deposition, described, supra, contradicts Winstead's allegation as it does Wren's. But counsel was not appointed for Winstead to examine and cross-examine Kirkman. On remand, if pressed by Winstead to do so, the district judge should consider whether to authorize some further deposition of Kirkman on behalf of Winstead or the submission of interrogatories by counsel for Winstead that might shed further light on the disputed conversation between Kirkman and his clients. Since Kirkman has already testified by deposition as to his conversations with both petitioners, further proceedings may possibly be abbreviated.
 
 II. Walters
 
 8
 Walters claims that his guilty plea was induced by an unkept promise. He alleges that through his attorney, Robert Kneece, he made a bargain with an unnamed Assistant United States Attorney to plead guilty in return for a ten-year sentence. He alleges also that the bargain was confirmed in a conversation between him and the Assistant United States Attorney within the hearing of five named persons including Kneece. Walters pleaded guilty and received two twenty-year concurrent sentences. He has been convicted also of threatening by mail the life of the district judge who sentenced him. In explaining his action, Walters stated that he had been told by an FBI agent that the judge had agreed with the "District Attorney" to give him "ten years with an 'A' sentence."
 
 
 9
 If Walters was in fact promised by the Assistant United States Attorney that he would receive a ten-year sentence, he is entitled to relief. Machibroda, supra; United States v. Carter, 454 F.2d 426 (4th Cir. 1972). Sentencing Walters was within the authority of no one but the trial judge. An assurance by another that Walters would receive a particular sentence, therefore, would be a promise that could not be kept. An unkept bargain which has induced a guilty plea is grounds for relief. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).
 
 
 10
 The transcript of the arraignment discloses that the trial judge conscientiously in compliance with Rule 11, Federal Rules of Criminal Procedure, examined Walters to ascertain if his plea was voluntary:
 
 THE COURT: Has anyone promised you anything:
 
 11
 DEFENDANT: No, sir.
 
 
 12
 THE COURT: Now, embraced in that is also the fact-because it very often occurs-that perhaps your lawyer, or one of your lawyers, may have said, "Well, I think it's better that you go along with a plea of guilty because you'll probably get a lighter sentence if you do that." Or maybe some of your friends have advised you to that effect. Or maybe some have said, "Well, I don't believe that the court would give you over so and so in the way of a sentence if you enter a plea of guilty." Now, you told me nobody has promised you anything. But even if somebody has done some of the things, or in the manner that I am suggesting to you, that perhaps may have been done, do you fully understand that that in no way is binding on this court?
 
 
 13
 DEFENDANT: Yes, sir.
 
 
 14
 THE COURT: Do you fully understand that the court, and the court alone, is responsible under the law for any sentence that is imposed upon a defendant who pleads guilty or who is found guilty, do you fully understand that?
 
 
 15
 DEFENDANT: Yes, sir.
 
 
 16
 THE COURT: So you tell me that no one has promised you anything, is that correct?
 
 
 17
 DEFENDANT: Yes, sir.
 
 
 18
 THE COURT: I ask you, has anyone threatened you, coerced you, or intimidated you in any manner into waiving your rights and telling this court that you are in fact guilty of the charges against you in this indictment. Has anyone threatened, coerced, or intimidated you to make you do such?
 
 
 19
 DEFENDANT: No, sir.
 
 
 20
 It is doubtful that the trial judge's instruction that the length of Walters' sentence was within his sole control would have eradicated the effect of the prosecutor's alleged promise to Walters.
 
 
 21
 The Government's return denies that either the Assistant United States Attorney or Walter's attorney made any promise about his sentence. Attached to the return are affidavits from Assistant United States Attorney John Fowles, Jr., who, according to the affidavit, had primary responsibility for handling Walters' case, and Robert Kneece, each denying that he had made any promises about the sentence. Walters was represented at the arraignment by William O. Kneece, and the Government was represented at both the arraignment and the sentencing by Assistant United States Attorney Thomas P. Simpson. The Government submitted affidavits from neither. The situation is reminiscent of that in Santobello, supra, where it was said the prosecutor must let "the left hand know what the right hand is doing".
 
 
 22
 We think that the pleadings raise an issue of material fact that cannot be determined conclusively from the record. At a minimum the record must be expanded to include affidavits from William Kneece and Assistant United States Attorney Simpson in response to Walters' allegation and affidavits from Walters' witnesses supporting his claim. Indeed on these allegations and the representation of so many witnesses the district court would probably be well advised to order an evidentiary hearing-although the method of inquiry- whether by affidavits, interrogatories, depositions or other means is ordinarily left initially to the discretion of the trial judge. Kent, supra, citing Machibroda, supra. Depending upon the indicated testimony of William O. Kneece and Simpson and Walter's alleged supporting witnesses it may or may not be necessary to produce the prisoner.
 
 
 23
 Apparently the basis below for dismissing Walters' motion was that his claim was conclusively refuted by his denial at the arraignment that any promise had induced his plea. A number of circuits have adopted this view. E. g., Pursley v. United States, 391 F.2d 224 (5th Cir. 1968); Norman v. United States, 368 F.2d 645 (3d Cir. 1966); Putnam v. United States, 337 F.2d 313 (10th Cir. 1964); United States v. Davis, 319 F.2d 482 (6th Cir. 1963). We think, however, that strict compliance with Rule 11 unfortunately cannot always accomplish its purpose of enabling "expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas," McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). Examination of the defendant alone will not always bring out into the open a promise that has induced his guilty plea. It is well known that a defendant will sometimes deny the existence of a bargain that has in fact occurred, e. g., White v. Gaffney, 435 F.2d 1241 (10th Cir. 1970); Jones v. United States, 423 F.2d 252 (9th Cir. 1970); out of fear that a truthful response would jeopardize the bargain.
 
 
 24
 If the judge, the prosecution, or the defense counsel makes a statement in open court that is contrary to what he has been led to believe, especially as to promises by the prosecutor or his defense counsel, . . . [the defendant] would no more challenge the statement in open court than he would challenge a clergyman's sermon from the pulpit.
 
 
 25
 United States v. Williams, 407 F.2d 940, 949 n. 13 (4th Cir. 1969), quoting from Trebach, The Rationing of Justice 159-60 (1964). The danger that a Rule 11 inquiry will not uncover a plea bargain is sufficient that the defendant's responses alone to a general Rule 11 inquiry cannot be considered conclusive evidence that no bargaining has occurred. See Reed v. United States, 441 F.2d 569 (9th Cir. 1971); United States v. Simpson, 436 F.2d 162 (D.C.Cir. 1970); United States v. McCarthy, 433 F.2d 591 (1st Cir. 1970); Trotter v. United States, 359 F.2d 419 (2d Cir. 1966).
 
 
 26
 Surely in the future the United States Supreme Court's approval of plea bargaining, Santobello, supra, will dispel the doubt about the validity of plea bargaining that has caused plea bargains traditionally to be shrouded in secrecy. "We reiterate what we have said before: that when plea bargaining occurs it ought to be spread on the record and publicly disclosed." Raines v. United States, 423 F.2d 526, 530 (1970). "[I]f [a plea] was induced by promises, the essence of those promises must in some way be made known." Santobello, supra at 261-262, 92 S.Ct. at 498.
 
 
 27
 District judges in this circuit ought henceforth to expand their Rule 11 inquiry substantially as follows:
 
 
 28
 I now inquire of the United States Attorney and of the prisoner and his counsel whether or not there have been plea negotiations. Before permitting you to respond, I advise you that the United States Supreme Court has specifically approved plea bargaining and has said it is "an essential component of the administration of justice . . . . to be encouraged." You may, therefore, advise me truthfully of any plea negotiation without the slightest fear of incurring disapproval of the court.
 
 
 29
 We are inclined to the viewpoint that a negative response to such an inquiry would finally conclude the subject matter and prevent subsequent litigation.
 
 
 30
 Finally, Walters claims that he was improperly sentenced by the district court. He pleaded guilty to two counts of an indictment charging violations of the federal bank robbery statute, 18 U.S.C.A. Secs. 2113(a) and (d). Both counts arose out of the same transaction. Walters was sentenced to twenty years on each count, the sentences to run concurrently. It was not the intent of Congress by the various sections of 18 U.S.C.A. Sec. 2113 to create a number of distinct crimes for a single bank robbery. See Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); Prince v. United States, 352 U. S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). Rather the various sections "create different maximum punishments for a single offense depending on whether aggravating circumstances exist", Eakes v. United States, 391 F.2d 287, 288 (5th Cir. 1968), and it is impermissible to impose sentence under more than one section of a single transaction, see Heflin, supra; Prince, supra. It is just as impermissible to impose concurrent sentences as it is to impose consecutive sentences because of the harmful consequences that could flow therefrom. United States v. Von Roeder, 435 F.2d 1004 (10th Cir. 1971). Accordingly, Walters is entitled to have his conviction under one of the counts vacated on remand.
 
 
 31
 Affirmed in part, reversed in part, and remanded.
 
 
 32
 WINTER, Circuit Judge (concurring in part and dissenting in part):
 
 
 33
 I agree with the majority's disposition of Winstead's case, although I am inclined to think that it would be better to remit him to the filing of a new motion under 28 U.S.C.A. Sec. 2255 with respect to the new material which was presented to us, rather than to remand the present case for further proceedings. A new motion would require a new application under oath with attendant penalties for perjury if the new application is not truthful. Whether on remand or on a new application, further disposition of Winstead's case should accord with the views I later express.
 
 
 34
 My point of difference with the majority is in regard to Wren's and Walters' cases. I think that Wren did not receive an evidentiary hearing of the type to which he was entitled, and I would, therefore, reverse and remand for further proceedings. Walters is certainly entitled to have one of his two twenty-year sentences stricken, but he is entitled to more. He is entitled to a more searching and effective hearing than the majority apparently contemplates.
 
 I Wren's Case
 
 35
 Wren alleged that Mr. Kirkman, his attorney, told Wren that Kirkman would file a notice of appeal on behalf of Wren, but that Kirkman failed to do so. The district judge ordered the United States to depose Mr. Kirkman with respect to Wren's allegation, and the district judge appointed counsel to represent Wren at the deposition, but declined to permit Wren to be present.
 
 
 36
 On deposition, Mr. Kirkman testified that he had discussed the prospects of an appeal with Wren, that he had advised Wren that an appeal would be a waste of time, and that Wren agreed. Kirkman also testified that Wren did not request him to file a notice of appeal and he never told Wren that he would file a notice of appeal on Wren's behalf.
 
 
 37
 The Sec. 2255 motion was decided without Wren's appearing in court-his testimony was merely assumed from the sworn allegations that he had made. Mr. Kirkman did not appear before the court in person, but his deposition was considered and weighed as to credibility against Wren's assumed testimony, with the result that Kirkman was believed and Wren was not.
 
 
 38
 Manifestly, there was a direct conflict between Wren's sworn allegations and Kirkman's testimony on deposition as to matters in which Wren and Kirkman both allegedly participated. The resolution of this conflict required a determination of credibility between the two. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), held that a prisoner need not always be heard in open court; whether to hear him is within the discretion of the district court. But the earlier case of United States v. Hayman, 342 U.S. 205, 223, 72 S.Ct. 263, 274, 96 L.Ed. 232 (1952), made certain how this discretion should be exercised when it held that "[w]here, as here, there are substantial issues of fact as to events in which the prisoner participated, the trial court should require his production for a hearing." Our decision in Raines v. United States, 423 F.2d 526 (4 Cir. 1970), is in accord with these cases. Although in Raines we recognized that certain motions under Sec. 2255 may be decided upon an expanded record without hearing, we also stated that "[t]here will remain, however, a category of petitions, usually involving credibility, that will require an evidentiary hearing in open court." 423 F.2d at 530. Wren's case is in this category, and a hearing at which he was present was required.
 
 
 39
 Where the single issue was the credibility of Wren and Mr. Kirkman, Wren should have been seen and observed by the district judge so that he would be able to resolve this issue with the help of his own observation of Wren's testimonial demeanor. Wren's whereabouts were known and the district court had the power to require his production. United States v. Hayman, supra. His testimony, like the testimony of any other witness, might be bolstered by cross-examination and thus be more persuasive than if his answers were only assumed. Kirkman, too, should have been present for the same reason; and, if for illness, other professional engagement, or any other reason, Kirkman could not be brought to court, his deposition should not have been used unless Wren was present when it was taken. Wren's right to counsel was recognized, but Wren's counsel should have had the aid of his client in cross-examination of Kirkman so as to be able to provide Wren with effective assistance of counsel. There is nothing in this record to justify Kirkman's absence from court. Absent such justification, I do not think that the "hearing" which Sec. 2255 mandated was afforded when neither Wren nor Kirkman was seen and heard in person by the district judge and when Kirkman was deposed out of the presence of Wren.
 
 II Walters' Case
 
 40
 From the pleadings it appears that Walters' case raises the issue of whether his guilty plea was induced by an unkept promise alleged to be within the knowledge of Walters, his counsel, an assistant United States attorney, Mrs. Walters, and three other witnesses. The fact of the promise is denied in the pleadings by the United States attorney and Walters' counsel.
 
 
 41
 Here, again, I think it plain that whether relief should be granted will depend upon a determination of credibility. I see no escape from the production of Walters and the various witnesses in person before the court to testify. Absent some compelling reason why those having knowledge of the matter cannot be present, I would not permit their evidence to be produced by interrogatories, depositions or other means, as suggested by the majority. Walters can obviously be produced, as can two of the other witnesses who are said to be confined in federal prison. I think that Hayman, Machibroda and Raines require no less than the type of hearing I suggest. And so read, they do not establish the extremely burdensome and unworkable per se rule feared by the majority. If penalties for perjury are strictly enforced, the making of frivolous allegations will be held to a minimum.